**James EBERSOL and Mary Mitchelen, Appellants–Plaintiffs,**

v.

**Glenn and Betty MISHLER, and Helen Clevenger, Appellees–Defendants.**

No. 52A05–0201–CV–51.

Court of Appeals of Indiana.

Sept. 17, 2002.

---

**376**

Robert J. Palmer, South Bend, IN, Attorney for Appellants.

Richard L. Russell, Rebecca R. Vent, Russell, McIntyre, Hilligoss & Welke, Kokomo, IN, Attorneys for Appellees.

**OPINION**

NAJAM, Judge.

**STATEMENT OF THE CASE**

James Ebersol ("James") and Mary Mitchelen ("Mary") appeal the trial court's entry of summary judgment in favor of Glenn and Betty Mishler (collectively "the Mishlers") on James and Mary's complaint to set aside Commissioner's deed, quiet title, and for eviction. James and Mary present several issues for our review which we consolidate and restate as the following dispositive issues:

1. Whether genuine issues of material fact preclude summary judgment for the Mishlers.

2. Whether the trial court erred when it found that James and Mary's lawsuit was frivolous and without merit and awarded attorney's fees.

We reverse and remand for further proceedings.[1]

1. The Mishlers' argument that James and Mary's notice of appeal was not timely filed is without merit. Contrary to the Mishlers' contention, the trial court's order granting summary judgment in favor of the Mishlers was not a final, appealable order until December 17, 2001, when the court entered its order awarding the Mishlers $13,581.50 in attorney's fees. *See Clark v. Atkins*, 489 N.E.2d 90, 99 (Ind.Ct.App.1986), *trans. denied.*

## FACTS AND PROCEDURAL HISTORY

On January 5, 1948, Emma Hochstetler died testate. In her will, Hochstetler left a parcel of real property located in Miami County ("Miami property") to James and Mary and their sisters, Helen Clevenger and Carmen Lehman (now deceased), subject to a life estate in their father, Menno Ebersol ("Menno"). In February 1954, Menno and his children signed a contract purporting to sell the Miami property to Harley Mishler ("Harley"), but that sale never occurred.[2] Instead, on May 27, 1954, Menno and his children filed a partition action in the Miami Circuit Court requesting the court to authorize an exchange of the Miami property for property located in Elkhart County and owned by Violet Miller ("the Miller farm"). The court approved the exchange by a Commissioner's deed. After the exchange, on May 28, 1954, Violet Miller sold the Miami property to Harley and his wife, who, in turn, sold the property to Glenn and Betty Mishler. In 1965, Menno and his children sold the Miller farm.

Menno died in 1997. Shortly before his death, James and Mary's attorney discovered documents regarding the 1954 lawsuit which led to the exchange of the Miami property for the Miller farm. James and Mary now claim that they had no knowledge of that lawsuit and that they never signed the contract for sale of the Miami property to Harley.

On January 12, 1999, James and Mary filed a complaint against the Mishlers and Clevenger to set aside the Commissioner's deed, all subsequent deeds, to quiet title, and for eviction. The Mishlers moved for summary judgment, alleging that because James and Mary either authorized or had actual or constructive knowledge of the exchange of the Miami property for the Miller farm in 1954, they cannot now complain. Following a hearing, the trial court granted the Mishlers' summary judgment motion. The court issued the following findings and conclusions:

Comes now the Court and grants the Defendants' Motion for Summary Judgment. Plaintiffs allege they were not actually the Plaintiffs in a 1954 Miami Circuit Court Partition action under Cause No. 23998. They allege that action was a fraud perpetrated by their father, Menno Ebersol, and that they were never notified of the action. The real estate that was the subject matter of the partition action was willed to Plaintiffs by Emma Hostetler [sic] who died in 1948. Emma Hostetler's will was duly probated and gave her "real estate" to the Plaintiffs subject to a life estate in their father, Menno Ebersol. Plaintiffs further signed a Contract for Sale of Real Estate (Exhibit "G" of Defendant's Motion for Summary Judgment) selling the disputed property to Harley and Ruth Mischler [sic] in 1954, although now they disavow any knowledge of the contract. Despite inheriting the property from their grandmother, Emma Hostetler, Plaintiffs admit they "have not set foot on the real estate . . . since May 1, 1954."

*It is clear to the Court that Plaintiffs knew they had [a] possessory interest in the subject real estate as early as 1948 and no genuine issue of fact remains as to their knowledge of their possession [sic] interest. As such, the Court finds in favor of the Defendants on their affirmative defenses of laches, estoppel and adverse possession.*

---

**2.** While the parties do not explain why the sale to Harley did not go through, the undisputed evidence indicates that Violet Miller sold the Miami property to Harley on May 28, 1954, one day following the like-kind exchange with Menno.

The Court further finds in favor of the Defendants on their Counter–Claim finding Plaintiffs' complaint to be frivolous and without merit. The Court now sets, this matter for further hearing to determine the amount of attorney fees to be applied as a judgment. The Court sets this hearing for the 27th day of November, 2001 at 9:00 a.m.

All of which is ordered this 26th day of October, 2001.

(Emphasis added). James and Mary now appeal.

## DISCUSSION AND DECISION

### Standard of Review

■ In determining the propriety of summary judgment, we apply the same standard as the trial court. *Jesse v. American Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Id.* Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Bradley v. Hall*, 720 N.E.2d 747, 750 (Ind.Ct.App. 1999). This is true even if the court believes the non-moving party will not succeed at trial. *Id.* The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co., Inc.* 727 N.E.2d 790, 792 (Ind. Ct.App.2000).

■ We note that the trial court made findings and conclusions in support of its summary judgment entry. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *See Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App. 2000), *trans. denied.* If the trial court's summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

### Issue One: Questions of Material Fact

■ James and Mary contend that the trial court erred when it found, as a matter of law, that their claim against the Mishlers is barred by the doctrines of laches, estoppel, and adverse possession. Specifically, James and Mary contend that questions of fact exist regarding whether they authorized or had actual knowledge of the transfer of the Miami property to Violet Miller in 1954. We must agree.

■ Laches is comprised of three elements: 1) inexcusable delay in asserting a known right; 2) an implied waiver arising from knowing acquiescence in existing conditions; and 3) a change in circumstances causing prejudice to the adverse party. *Shafer v. Lambie*, 667 N.E.2d 226, 231 (Ind.Ct.App.1996). A mere lapse in time is insufficient; unreasonable delay which causes prejudice or injury is necessary. *Id.* The issue of laches is viewed as a question of fact to be resolved by the trial court in the exercise of its sound discretion from the facts and circumstances of each case. *Id.*

■ An equitable estoppel requires a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice. *Erie–Haven, Inc. v. First Church of Christ*, 155 Ind.App. 283, 292 N.E.2d 837, 842 (1973) (quoting *Midland Bldg. Indus. v. Oldenkamp*, 122 Ind. App. 347, 103 N.E.2d 451, 453 (1952)).

Equitable estoppel may arise from silence, or acquiescence, as well as from positive conduct. *Id.* "Acquiescence is a release or an abandonment of one's rights if, having rights, he stands by and sees another dealing with his property, in a manner inconsistent with such rights, and makes no objection while the act is in progress." *Id.* (quoting *Board of Comm'rs of Cass County v. Plotner,* 149 Ind. 116, 121, 48 N.E. 635 (1897)).

■■■■ To acquire title by adverse possession, the claimant's possession must be: actual, visible, open, notorious, exclusive, under a claim of ownership, hostile, and continuous for at least the statutory period of limitation. *Piel v. Dewitt,* 170 Ind.App. 63, 351 N.E.2d 48, 53 (1976). The general rule in Indiana is that the statute of limitations does not run against a remainderman until the termination of the intervening life estate. *Id.* Indiana Code Section 34–11–2–5 bars actions to recover the possession of real estate not commenced within five years after the sale is confirmed. However, a remainderman has no right to possess the land until the life estate ends. *Id.* Without an immediate right of possession, a remainderman is incapable of maintaining an ejectment action to recover the possession of real estate. *Id.* Thus, the rationale for the rule emerges from the unfairness inherent in impressing a limitation period for the recovery of real estate upon a person who lacks a remedy for its recovery. *Id.*

■■■■ First, we conclude that the trial court erred when it found that James and Mary signed the 1954 contract purporting to sell the subject property to Harley. James and Mary designated evidence in opposition to summary judgment establishing a question of fact on that issue. Second, the trial court also erred when it found that James and Mary "knew they had [a] possessory interest in the subject real estate as early as 1948." As we have already noted, a remainderman has no right of possession until the life estate ends. *See Piel,* 351 N.E.2d at 53. Thus, James and Mary could not have had a possessory interest in the Miami property until Menno died in 1997.

■■■■ As a general rule, the doctrines of laches, estoppel, and adverse possession can be asserted only against those who have a present right to possess the real estate in question. A life tenant is bound to take reasonable care to preserve and protect the property for the future enjoyment of the remaindermen. *Id.* at 55. Thus, until a remainderman attains actual notice to the contrary, he is entitled to presume the life tenant and his grantees are holding the real estate in deference to the remainderman's future interest. *Id.* But laches, estoppel, and adverse possession can operate against a remainderman who has actual notice that a life tenant, either through his acts or omissions, is not protecting the remainderman's future interest. Here, whether these doctrines apply will depend upon whether and, if so, when James and Mary knew about the 1954 exchange of the Miami property for the Miller farm or knew that Menno had otherwise impaired their future possessory interests.

■■■■ The Mishlers contend they need only prove that James and Mary had *constructive* notice of the exchange. But in *Piel,* this court considered whether constructive or actual notice was required to start the statute of limitations running against a remainderman. We analyzed the three prevailing views among jurisdictions that had considered the issue, and we adopted the majority rule, which "rejects constructive notice by recordation as inadequate because the remainderman should not be obliged to constantly inspect a deed

registry to preserve his title." *Piel*, 351 N.E.2d·at 54. In *Piel*, we held that the remaindermen "claim their title through [the] decedent [ ], not the Life Tenant, and therefore were not under a duty to search the records for [the Life Tenant's] conveyance to the Claimant. *The notice required must be actual, and the mere recording of a deed does not suffice." Id.* at 55 (emphasis added). We hold that this principle, which we applied to the doctrine of adverse possession in *Piel*, also applies to the doctrines of laches and estoppel. Thus, the Mishlers must show that James and Mary had *actual* notice[3] of the property exchange, and whether each of those doctrines applies to bar their claim depends upon *when* they acquired that notice.

In support of their motion for summary judgment, the Mishlers presented evidence that James and Mary signed the 1954 contract purporting to sell the Miami property to Harley and that James and Mary were named plaintiffs in the 1954 partition action which led to the Commissioner's deed approving the exchange of the Miami property for the Miller farm. The Mishlers contend that this evidence supports the trial court's determination that James and Mary's 1999 complaint was barred by the doctrines of laches, estoppel, and adverse possession. However, James and Mary designated evidence in opposition to the Mishlers' motion for summary judgment which included James and Mary's affidavits, wherein they each state, in relevant part:

7. I had no knowledge regarding the ownership, use, possession or alleged trade or transfer of the [Miami property] subsequent to the death of my maternal grandmother Emma Hostetler until shortly before the death of my father, Menno Ebersol on January 13, 1997, aside from the fact that I now know that several homes have been constructed there.

8. I have never discussed this Real Estate with the defendants or anyone who possessed, lived at or claimed to have purchased or owned the Real Estate subsequent to April 1, 1954.

9. My siblings . . . and I never received notice, summons or service of process from the lawsuit filed in the Miami Circuit Court in May, 1954 which forms the basis of the defendants' claim to this Real Estate.

10. My siblings . . . and I never discussed that lawsuit filed in May, 1954 in the Miami Circuit Court, Cause No. 23998, with anyone involved in that case, including our father and his attorney Albert Cole.

11. My siblings and I have never met with or spoke to attorney Albert Cole and we did not consent to, authorize or have knowledge of the lawsuit filed in the Miami Circuit Court or attempted transfer of the Real Estate in 1954.

12. I never received any notice from the court or any party to the lawsuit filed in the Miami Circuit Court in May, 1954 or from any party involved in this lawsuit that there was any claims or

**3.** Actual notice may be implied or inferred from the fact that the person charged had means of obtaining knowledge which he did not use. *Keybank Nat. Ass'n v. NBD Bank,* 699 N.E.2d 322, 327 (Ind.Ct.App.1998). Whatever fairly puts a reasonable, prudent person on inquiry is sufficient notice to cause that person to be charged with actual notice, where the means of knowledge are at hand and he

omits to make the inquiry from which he would have ascertained the existence of a deed or mortgage. *Id.* Thus, the means of knowledge combined with the duty to utilize that means equates with knowledge itself. *Id.* Whether knowledge of an adverse interest will be imputed in any given case is a question of fact to be determined objectively from the totality of the circumstances. *Id.*

attempts to transfer ownership or title to the Real Estate or any claim or act inconsistent with my rights or my father's life estate.

13. During the last year of my father's life, I received copies of the Court records from the action filed in the Miami Circuit Court in May, 1954 from our attorney, discovered while reviewing the documents concerning this Real Estate in the Miami County Record[er]'s Office.

\* \* \*

15. I never signed the Contract for Sale of Real Estate attached as Exhibit "G" to the defendants' Motion for Summary Judgment, and neither did my siblings to the best of my knowledge.

16. I never met or talked with Violet Miller concerning the purported trade of the Real Estate for her farm in Elkhart County ("the Miller Farm") in May, 1954 prior to the filing of this lawsuit.

17. In 1964, my father advised us that myself and my siblings were part owners of the Miller Farm but did not inform us of how, when or why our names were added to that property. I never saw any deeds or documents relating to title of the Miller Farm except for the deed I signed in 1965 conveying the Miller Farm to Burns Stark and Carrie Stark.

18. Prior to discussing the records from the Miami County Recorder's Office with our Attorney during the year before my father's death, I assumed that anyone in possession of the Real Estate was a tenant of my father, who had a life estate.

This designated evidence directly contradicts the Mishlers' evidence that James and Mary signed the 1954 contract for sale and authorized or had actual knowledge regarding the exchange of the Miami property for the Miller farm in 1954. Accordingly, genuine issues of material fact exist, and the trial court erred when it granted the Mishlers' motion for summary judgment. The resolution of these issues by a trier of fact is necessary to determine whether James and Mary's 1999 complaint is barred by the doctrines of laches, estoppel, or adverse possession. In addition, we conclude that the trial court's entry of summary judgment cannot be sustained on any other theory or basis in the record without a resolution of these questions of material fact.[4] We therefore reverse the trial court's entry of summary judgment in favor of the Mishlers and remand for further proceedings consistent with this opinion.

**Issue Two: Frivolous Lawsuit and Attorney's Fees**

The trial court also erred when it found that James and Mary's complaint was frivolous and awarded the Mishlers attorney's fees. Indiana Code Section 34–52–1–1 provides in relevant part:

In any civil action, the court may award attorney's fees as part of the cost to *the prevailing party,* if the court finds that either party:

(1) *brought the action* or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) *continued to litigate the action* or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

---

4. In particular, the Mishlers also contend that summary judgment was appropriate pursuant to Indiana Code Section 32–1–2–16, Indiana's "race notice" statute. But we find that statute inapplicable to the circumstances present-

ed here, which do not involve a failure to properly record a conveyance or lease. Moreover, the Mishlers do not present cogent argument in support of this contention, and we deem it waived.

(3) litigated the action in bad faith.

(Emphases added). A claim is "frivolous" if it is established that it was brought for the purpose of an improper motive such as harassment or if legal counsel is unable to make a good faith, rational argument on the merits of the case. *Brant v. Hester*, 569 N.E.2d 748, 754 (Ind.Ct.App.1991). In addition, we have considered a claim "groundless" only if no facts exist which support a legal claim presented by the losing party. *Id.*

Here, since we are remanding for further proceedings, there is no prevailing party yet, and there is no basis to award attorney's fees at this time. Thus, we reverse the trial court's attorney's fees award. Upon remand, once this case has been resolved by the trier of fact, the trial court may revisit the issue of awarding attorney's fees under Indiana Code 34–52–1–1.

Reversed and remanded for further proceedings.

BAILEY and ROBB, JJ., concur.