CITY OF NORTH VERNON, Indiana, Appellant–Defendant,

v.

JENNINGS NORTHWEST REGIONAL UTILITIES, Vance D. Funkhouser, Max A. Wiley, Norma Teeple, Donald McCauley, Lynn H. Clark, Jolene McQueen and Paul Michael Irwin, in their capacity as Trustees of the Jennings Northwest Regional Utilities, Appellees–Plaintiffs.

No. 40A01–0304–CV–145.

Court of Appeals of Indiana.

Dec. 5, 2003.

---

4. *See, e.g., Hopkins v. State,* 759 N.E.2d 633, 638 (Ind.2001).

5. *See, e.g., Foster v. State,* 436 N.E.2d 783, 786 (Ind.1982).

[black redaction box]

Corinne R. Finnerty, McConnell & Finnerty, North Vernon, IN, Attorney for Appellant.

Mary Ann Gay, Versailles, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In October 1999, Jennings Northwest Regional Utilities and Vance D. Funkhouser, Max A. Wiley, Norma Teeple, Donald McCauley, Lynn H. Clark, Jolene McQueen, and Paul Michael Irwin, in their capacities as Trustees of Jennings Northwest Regional Utilities (collectively "JNRU"), filed a declaratory judgment action against the City of North Vernon, Indiana ("the City"), asking the trial court to determine that JNRU is authorized to provide sewer services to Sand Creek Elementary School ("the School") and that the City has no right to provide such services. The City moved to dismiss JNRU's action, and the trial court treated that motion as one for summary judgment. JNRU then filed its own summary judgment motion. In December 2002, the trial court entered judgment in favor of JNRU. The City filed a Motion to Correct Error and, following a hearing, the trial court issued its Modified Summary Judgment ruling reaffirming its judgment in JNRU's favor. The City now appeals and presents the following issues for review:

1. Whether the trial court erred as a matter of law when it concluded that JNRU is authorized to provide sewer services to the School and that, absent JNRU's consent or agreement, the City has no right to provide sewer services to the School.

2. Whether the trial court issued an advisory opinion.

3. Whether JNRU is judicially estopped from seeking a declaratory judgment.

We affirm.

### FACTS AND PROCEDURAL HISTORY

The City is located in Jennings County and owns and operates a wastewater treatment plant and collection system. By statute, the City may provide sewer services within its corporate boundaries and to an area outside those boundaries within a ten-mile radius. See Ind.Code § 36–9–23–16; Ind.Code § 36–9–23–36. In 1995, the Jennings County Commissioners petitioned the Indiana Department of Environmental Management ("IDEM") for an order establishing a regional water and sewer district to provide water and sewer services to a specific portion of Jennings County. In November 1996, IDEM issued an order pursuant to Indiana Code Section 13–26–2–10 establishing JNRU. Specifically, the IDEM order authorized JNRU to provide sewer services to Geneva Township, as well as portions of Sand Creek, Center, and Spencer Townships in Jennings County. The order specifically excluded the City's corporate boundaries from JNRU's district. But portions of the County that the City had been serving before JNRU was created overlapped with portions of JNRU's district.

Following IDEM's order, JNRU purchased the utility assets of CSL Utilities, Inc. and CSL Services, Inc., entities which provided water and sewer service within the Country Squire Lake subdivision in

Jennings County. JNRU then developed a plan to expand service out into its district, which included constructing a sewer line to the then-proposed Sand Creek Elementary School. The School was to be completed in 2000, and it was located within ten miles of the City's corporate boundaries.

In September 1998, the City filed a declaratory judgment action challenging the IDEM order which established JNRU. The City alleged, in part, that IDEM did not follow applicable statutes when it established JNRU and, thus, JNRU lacked authority to prevent the City from expanding its sewer services beyond its corporate boundaries. JNRU responded that the City's claim should be dismissed because it failed to follow the statutory procedures for challenging IDEM's order under the Administrative Orders and Procedures Act. The trial court dismissed the City's complaint, and this court affirmed that ruling on appeal. *City of North Vernon v. Funkhouser*, 725 N.E.2d 898 (Ind.Ct.App. 2000).

Both JNRU and the City approached the School about connecting to their respective sewer lines and providing sewer services. In July 1999, JNRU sent the School a letter concerning the execution of a service contract and conveyance of the necessary easements. The School responded that it did not intend to connect to JNRU's service line but, instead, would enter into a service agreement with the City. JNRU then informed both the School and the City that JNRU would provide service to the School because it was located within JNRU's service district. Nevertheless, the City entered into a thirty-year service contract with the School and has provided service to the School since it opened in 2000.

JNRU filed its complaint for declaratory relief in October 1999. At that time,

JNRU had begun constructing sewer lines to serve the School but was not ready to provide service. The City moved to dismiss JNRU's complaint, arguing, in part, that JNRU was judicially estopped from seeking a declaratory judgment to establish its right to serve the School because of arguments JNRU had raised previously in litigation. The trial court treated the City's motion as a motion for summary judgment because the City had attached various exhibits to its motion. *See* Ind. Trial Rule 12(B)(8). JNRU then filed its motion for summary judgment. The trial court entered judgment in JNRU's favor and later issued a modified order affirming that judgment, which provides in relevant part:

## CONCLUSIONS OF LAW

\* \* \*

2. This lawsuit deals only with the provision of sewer services from the date of JNRU's creation.

3. JNRU is a regional water and sewer district organized and operating under and deriving its powers from Title 13, Article 26 of the Indiana Code.

4. JNRU is an independent political entity of the State of Indiana, a body corporate and political.

5. JNRU is an independent municipal corporation under I.C. 13–26–2–10(a) whose purpose is the collection, treatment and disposal of sewage from within the District.

6. The State of Indiana, through [IDEM], expressly granted JNRU the power to provide sewage collection, treatment and disposal services within its territorial jurisdiction.

\* \* \*

9. [The City] has exclusive jurisdiction over the sewers and drains inside its corporate boundaries under I.C. 36–1–3–9.

10. [The City] has the power to construct, operate and maintain sewage works under I.C. 36–9–23–2 and 36–9–2–17.

11. [The City] has the discretionary power to provide sewer service in areas within ten (10) miles outside its corporate boundaries under I.C. 36–9–23–36.

12. [The City], under Indiana's Home Rule Statute, I.C. 36–1–3–5 may exercise its power to provide sewer service to the extent that the power is not expressly granted to another entity.

13. [The City] may exercise its power to provide sewer service extraterritorially if the exercise of that power does not conflict with the grant of the same power to another municipal corporation.

14. [The City's] right to exercise its power extraterritorially is not absolute.

15. [The City] and JNRU do not have concurrent territorial jurisdiction within JNRU's district.

16. JNRU has primary territorial jurisdiction over the provision of sewer service within its district since its creation.

17. JNRU has primary territorial jurisdiction over the provision of sewer service to Sand Creek Elementary School.

18. [The City] may legally exercise its power to provide sewer service in areas outside its corporate boundaries only if both the municipality and the municipal corporation enter into an interlocal cooperation agreement under I.C. 36–1–7, et seq.

19. [The City's] right to provide sewer service extraterritorially to Sand Creek Elementary School is contingent upon JNRU's consent and agreement thereto.

20. JNRU has never agreed or consented to or acquiesced in [the City's] exercise of its power to provide sewer service extraterritorially to Sand Creek Elementary School.

\* \* \*

22. Without JNRU's consent or agreement, [the City] has no right to provide sewer service to Sand Creek Elementary School.

23. [The City's] act of providing sewer service to Sand Creek Elementary School is *ultra vires* and without legal basis.

24. There is no genuine issue of material fact.

25. JNRU is entitled to judgment as a matter of law.

This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Allstate Ins. Co. v. Smith,* 656 N.E.2d 1156, 1157 (Ind. Ct.App.1995). Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). In the context of cross-motions for summary judgment, the trial court must deal with each motion

separately, construing the facts and inferences to be drawn therefrom in a light most favorable to the non-moving party. *Allstate,* 656 N.E.2d at 1157. If the facts are undisputed, our task is to determine the law applicable to those facts, and whether the trial court correctly applied it. *Id.*

Here, the trial court issued findings and conclusions in support of its summary judgment entry. Although we are not bound by those findings and conclusions, they aid our review by providing reasons for the trial court's decision. *Ebersol v. Mishler,* 775 N.E.2d 373, 378 (Ind.Ct.App. 2002). If the trial court's summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

### Statutory Background

Indiana Code Section 13–26–2–1 *et seq.* governs the establishment of regional water and sewage districts. A regional district, once established, is an "independent municipal corporation." I.C. § 13–26–2–10. Indiana Code Section 13–26–5–2 sets forth the powers of a regional district, which includes the district's authority to exercise its powers without obtaining the consent of other entities. JNRU is a regional district with those powers enumerated at Indiana Code Section 13–26–5–2.

■■■ The City, however, is a municipality, as defined by Indiana Code Section 36–1–2–11. As a municipality, the City has the authority to establish, operate, maintain, and regulate sewers, sewage disposal systems, and systems to collect and dispose of waste substances. *See* Ind. Code § 36–9–23–16 and –17. As we explained in *Town of Plainfield v. Town of Avon,* 757 N.E.2d 705, 711 (Ind.Ct.App. 2001):

Such general powers [of a municipality] typically may be exercised only within the corporate boundaries of the municipality. A municipality has "exclusive jurisdiction" over sewers within its corporate boundaries. Indiana Code [S]ection 36–1–3–9 provides in pertinent part that:

(a) The area inside the boundaries of a county comprises its territorial jurisdiction. However, a municipality has exclusive jurisdiction over bridges (subject to IC 8–16–3–1), streets, alleys, sidewalks, watercourses, sewers, drains, and public grounds inside its corporate boundaries, unless a statute provides otherwise.

(b) The area inside the corporate boundaries of a municipality comprises its territorial jurisdiction, except to the extent that a statute expressly authorizes the municipality to exercise a power in areas outside its corporate boundaries.

Indiana statute expressly authorizes a municipality to exercise the powers granted by Indiana Code [S]ections 36–9–2–17 and 36–9–2–17 in areas four miles outside its corporate boundaries. *See* Ind.Code § 36–9–2–18. Furthermore, Indiana Code [S]ection 36–9–23–36 provides that a municipality may exercise jurisdiction to provide sewage works within ten (10) miles outside its corporate boundaries. The power of a municipality to extend its sewer system from its corporate boundaries is generally a discretionary one.

Additionally, under Indiana's Home Rule Act, the City may exercise any power it has to the extent that the power is not expressly granted to another entity. Ind. Code § 36–1–3–5. The Home Rule Act applies only to "units," Ind.Code § 36–1–3–1, which are counties, municipalities, and townships. Ind.Code § 36–1–2–23. Thus, JNRU, a municipal corporation, is not a unit for purposes of the Home Rule Act.

### Issue One: JNRU's Authority to Serve the School

■■ The City asserts that the trial court erred on multiple legal grounds

when it concluded that JNRU, and not the City, is authorized to provide sewer services to the School. First, the City contends that the court's conclusions follow the analysis of this court's opinion in *Town of Plainfield*. The City further asserts that the court erred when it applied *Town of Plainfield* here because that case is distinguishable. We agree with the City on this point.

In *Town of Plainfield*, 757 N.E.2d at 708–09, there was a dispute over which municipality would provide sewer service to a development located within Avon's corporate boundaries and two miles north of the corporate boundaries of Plainfield.[1] After the development had contacted both municipalities regarding service and determined that connection to Plainfield's sewer system would be cheaper, Plainfield asked Avon to enter into an interlocal cooperation agreement, wherein Avon would permit Plainfield to provide sewer service to the development. *Id.* at 709. When Avon refused to enter into the agreement, Plainfield filed suit requesting that the trial court resolve disputes regarding the agreement and require the parties to finalize the agreement. Stated differently, Plainfield asked the court to force Avon to enter into the interlocal cooperation agreement. Avon moved to dismiss the complaint, and the trial court granted that motion. *Id.*

On appeal, we analyzed Indiana's Home Rule Act, the statutes which allow municipalities to operate sewer systems, and the statutes governing interlocal cooperation agreements, and determined that neither Plainfield nor a court could force Avon to enter into such an agreement. *See generally* I.C. § 36–1–3–1 *et seq.* (Home Rule Act); I.C. § 36–9–2–16 and –17 (concerning unit's power to establish sewer sys-

tems); I.C. § 36–1–3–9 (concerning boundaries of municipality); Ind.Code § § 36–1–7–2, 36–1–7–3, 36–1–3–9 (concerning interlocal cooperation agreements). Specifically, we determined in part:

> We do not believe that Indiana Code [S]ection 36–1–3–9(d) grants a trial court the authority to compel a municipality to enter into an interlocal cooperation agreement with a neighboring municipality against its express wishes. To do so otherwise would effectively impinge on the territorial jurisdiction of the municipality and render corporate boundaries meaningless. Here, Avon's compulsion to enter into the proposed interlocal cooperation agreement would violate Avon's broad territorial jurisdiction and force Avon to relinquish its exclusive jurisdiction over the sewers within its corporate boundaries, all of which is contrary to Indiana Code [S]ection 36–1–3–9(a) and (b).
>
> Although Indiana statute permits a municipality to exercise its powers to provide sewer service extraterritorially, it may do so only with the consent and agreement of the municipality whose territorial jurisdiction has been impinged or where there is not a municipality or other unit to provide sewer service. Plainfield and Avon do not have concurrent territorial jurisdiction over the area upon which the Development resides. Avon has primary territorial jurisdiction over the subject area and "exclusive jurisdiction" over sewers within its corporate boundaries. Plainfield's right to provide sewer service to the Development is contingent on Avon's acquiescence to Plainfield's exercise of its powers extraterritorially.

*Id.* at 713.

The trial court's conclusions in this case are similar to the analysis in *Town of*

---

1. Specifically, the West Central Conservancy District, located in Avon, provided sewer service to Avon and in Hendricks County. Plainfield had its own sewer system.

*Plainfield* in that the court determined that, like two municipalities, the City and JNRU "do not have concurrent territorial jurisdiction within JNRU's district." Rather, the court concluded that JNRU has "primary territorial jurisdiction over the provision of sewer service within its district" and that the City's "right to provide sewer service extraterritorially" to the School, which is located within JNRU's district, is subject to JNRU's consent or agreement. In particular, the court concluded that the City may exercise its power to provide sewer services extraterritorially only if it and JNRU, a municipal corporation, enter into an interlocal cooperation agreement under Indiana Code § 36–1–7 *et seq.*

The reasoning of *Town of Plainfield* does not apply to this case because *Town of Plainfield* involved two municipalities and this case does not. Indeed, JNRU, as a regional sewage district, is a municipal corporation not subject to the same statutes applicable to municipalities. In particular, JNRU's territorial boundaries are not defined by Indiana Code Section 36–1–3–9. Further, JNRU is not subject to Indiana Code Section 36–9–23–36, which allows a municipality to exercise jurisdiction to provide sewage works within ten miles outside its corporate boundaries. In other words, in *Town of Plainfield* we were faced with a dispute over sewage service between two municipalities with the same powers and which were subject to the same territorial jurisdiction laws. Here, however, we are asked to determine what happens when there is an overlap between the sewage service area of a regional sewage district and the sewage service area of a municipality. Thus, the trial court erred to the extent that it relied on *Town of Plainfield* to resolve the dispute between JNRU and the City.

Still, we are not bound by the trial court's findings and conclusions on summary judgment and may sustain the court's judgment on any theory or basis in the record. *Ebersol,* 775 N.E.2d at 378. While *Town of Plainfield* is helpful in defining the City's powers and territorial jurisdiction to provide sewer services to the School, we must also look to the statutes governing regional sewage districts to determine JNRU's authority to serve the School. Despite error in the trial court's reasoning, our review of the relevant statutes supports the court's ultimate conclusion that JNRU is authorized to provide sewer service to the School and that the City may only provide such service with JNRU's consent and agreement.

Again, the City is subject to the Home Rule Act, which provides that it "may exercise any power it has to the extent that the power ... is *not expressly granted to another entity.*" *See* I.C. § 36–1–3–5 (emphasis added). And there is no dispute that JNRU is a valid regional sewage district granted specific powers under Indiana Code Section 13–26–1 to provide for the collection, treatment and disposal of sewage within the territorial limits of the district. In *Town of Merrillville v. Merrillville Conservancy Dist.,* 649 N.E.2d 645, 652 (Ind.Ct.App.1995), we held that Merrillville, a municipality, was precluded under the Home Rule Statute, I.C. § 36–1–3–5, from exercising powers granted to a sewage conservancy district under Indiana Code Section 13–3–3. In particular, we determined that where a conservancy district had been granted powers to provide for the collection, treatment, and disposal of sewage, Merrillville could not exercise conflicting powers under the Home Rule Statute. *Id.* Although *Town of Merrillville* involved a sewage conservancy district and not a regional sewage district, the same rationale and application of the Home Rule Statute applies here. There-

fore, under Indiana Code Section 36–1–3–5, the City is precluded from exercising its discretionary powers to provide sewer service to an area within ten miles of its corporate boundaries where other statutes expressly authorize JNRU to exercise those same powers within its district.

Still, the City argues that nothing in the relevant statutes or IDEM's order provides that a regional district's authority to provide sewer services within its district is exclusive. JNRU concedes, and we agree, that a regional district may allow other entities to provide services within its district. To that end, Indiana Code Section 13–26–5–7(b) provides:

> A governmental or private body owning and operating facilities for water supply, sewage, or solid waste disposal, recovery, or treatment may contract to supply water or treat all or part of the sewage and solid waste of a district. The contracts:
>
> (1) must be authorized by ordinance; and
>
> (2) are subject to approval by [IDEM].

This statute unambiguously provides that a municipality and a regional sewage district may enter into a contract when the municipality wishes to provide sewer services to all or part of the regional district's service area. Thus, JNRU's authority to provide services within its district is not necessarily exclusive.[2] But JNRU's authority to enter into contracts with other sewage works providers does not conflict, nor does it alter, the plain language of the Home Rule Statute, I.C. § 36–1–3–5, which precludes the City from exercising powers granted to JNRU under Indiana Code Section 13–26–1. *See Town of Merrillville*, 649 N.E.2d at 652.

■ In sum, although the trial court erred when it relied on *Town of Plainfield*, its ultimate conclusion that the City needed JNRU's permission to exercise its powers to provide sewer services within JNRU's district is correct. We conclude that before the City could have lawfully provided services to the School, it was required to enter into a contract with JNRU under Indiana Code Section 13–26–5–7(b).[3] In addition, because the City pro-

---

**2.** The City repeatedly refers to a letter sent by IDEM to the City's legal counsel in which IDEM stated in part: "The Indiana Department of Environmental Management's review of Indiana Code [Section] 13–26, the statute under which regional sewer/water districts are formed, reveals no provision specifically requiring the district's territory to be exclusively served by the district." The City asserts that we should defer to IDEM's interpretation of the statute and, more significantly, suggests that IDEM's statement that a district's service need not be exclusive within its territory supports the City's actions in providing services to the School. Contrary to the City's contention, IDEM's letter did not authorize the City to provide services to the School without JNRU's permission. Rather, IDEM's letter is consistent with our reading of Indiana Code Section 13–26–5–7(b), namely, that a regional district's authority to provide service within its district is not necessarily exclusive because the regional district may contract to allow other entities to treat all or part of the sewage

within the district. Still, a governmental or private body that wishes to provide such services within a regional district must have that district's permission.

**3.** Notwithstanding JNRU's ability to make contracts under Indiana Code Section 13–26–5–7, JNRU contends, and the trial court agreed, that a regional district and a municipality may enter into an interlocal cooperation agreement under Indiana Code Section 36–1–7–2. Political subdivisions may enter into interlocal cooperation agreements with other governmental entities, and JNRU, as a municipal corporation, is a political subdivision. *See* Ind.Code § 36–1–2–13. However, "[o]ur supreme court has held that '[i]n the construction of statutes, specific provisions will prevail over general provisions with relation to the same subject-matter.'" *Indiana Dept. of Envtl. Mgmt. v. Schnippel Constr., Inc.*, 778 N.E.2d 407, 417 (Ind.Ct.App.2002) (quoting *State v. Larue's*, 239 Ind. 56, 154

vided such services despite JNRU's objection and without its agreement, the trial court correctly determined that its provision of services to the School was not legally authorized.

Still, the City complains that the court's summary judgment order only addresses the provision of sewer services to the School and not to other customers in JNRU's district that the City had been serving before JNRU's creation. But our review of the record shows that JNRU has made clear that the only customer in dispute was the School, which was built and required sewer service only after JNRU's creation. Thus, the trial court was not required to address the status of customers other than the School.

In addition, the City contends that if we affirm the trial court's judgment, the City will have to stop serving the School, the School will be without sewer service, and it will be forced to close. As JNRU points out, however, it did not request, nor did the trial court order, that the City stop serving the School. JNRU's complaint was one for declaratory relief in which JNRU asked the court only to determine that JNRU has legal authority to serve the School and that the City does not. *See* Ind.Code § 34–14–1–12 (stating purpose of Declaratory Judgment Act is to settle insecurity with respect to rights, status, and other legal relations). Contrary to the City's contentions, the trial court's judgment does not and will not require the School to be without necessary sewer service.

### Issue Two: Advisory Opinion

Next, the City asserts that the trial court's judgment amounts to an advisory opinion because it is undisputed that JNRU is not currently capable of providing sewer services to the School. In support of its argument, the City directs us to *Town of Cumberland v. Indiana Dep't. of Envtl. Mgmt.*, 691 N.E.2d 206 (Ind.Ct.App. 1998). In that case, Cumberland sought judicial review of an IDEM order that created the Hancock County Regional Water and Sewage District. Cumberland raised three challenges to the order, namely, that there was insufficient evidence to supports IDEM's decision to create the district, that IDEM exceeded its statutory authority in creating the district, and that it was denied due process during the administrative proceedings. *Id.* at 208. But on appeal, Cumberland also asked this court to "issue a judicial determination that its rights under Indiana law have not been affected by the creation of the District." *Id.* at 210. We declined that invitation because to do so would have been " 'advisory and not dispositive of anything.' " *Id.* (quoting *Indiana Bureau of Motor Vehicles v. Zimmerman*, 476 N.E.2d 114, 118 (Ind.1985)).

■ The City's reliance on *Town of Cumberland* is misplaced. In that case, we refused to provide a judicial determination that Cumberland's legal rights had not been affected by the creation of the regional district because Cumberland raised that issue for the first time on appeal. It is well established that we will not address claims that a party did not litigate in the trial court because to do so would amount to an advisory opinion. *See Armstrong v. Federated Mut. Ins. Co.*, 785

N.E.2d 708, 710 (1958)) (holding that statute which specifically allows for costs against non-prevailing party where State initiates action applies, not general statute concerning costs awarded against non-prevailing party). Accordingly, we conclude that Indiana Code

Section 13–26–5–7, which specifically addresses a regional district's ability to make contracts with governmental entities for the provision of sewer services within its district, applies here, not the interlocal cooperation agreement statutes.

N.E.2d 284, 294 (Ind.Ct.App.2003) (Brook, C.J., concurring in result). Rather, we must decline a party's request to address on the merits a claim not raised and wait until the claim is properly before us. *Id.* In addition, at that procedural juncture, where Cumberland was appealing from an adverse decision on its petition for judicial review, a judicial determination from this court that Cumberland's rights had *not* been affected would not have resolved any matter in dispute.

 Here, unlike *Town of Cumberland*, JNRU sought a declaratory judgment based on a present dispute over which entity has the right to provide sewer service to the School. The Uniform Declaratory Judgment Act, Indiana Code Section 34–14–1–1 *et seq.*, provides that its purpose "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered." Ind.Code § 34–14–1–12. "Thus, the purpose of a declaratory judgment action is to quiet and stabilize legal relations and thereby provide a remedy in a case or controversy when there is still an opportunity for peaceable judicial settlement." *Ferrell v. Dunescape Beach Club Condominiums*, 751 N.E.2d 702, 707 (Ind.Ct. App.2001). Given that the City has been providing services to the School despite communications from JNRU that it lacked authority to do so, it was proper for JNRU to seek a declaratory judgment before taking any other action. In other words, having a court settle the legal rights of the parties was proper under the circumstances and does not amount to an advisory opinion.

### Issue Three: Judicial Estoppel

 Finally, the City asserts that JNRU should be judicially estopped from seeking a declaratory judgment from the court because it raised an inconsistent legal claim in previous litigation. We disagree.

It is the general rule that allegations or admissions in pleadings in a former action or proceeding will ordinarily estop the party making them from denying their truth in a subsequent action or proceeding in which he is a party to the prejudice of his opponent where the usual elements of estoppel by conduct are present. Also, there must have been a determination of the prior action, or, at least, the allegations or admissions must have been acted on by the court in which the pleadings were filed or by the parties claiming the estoppel.

Unlike equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between a litigant and the judicial system. Judicial estoppel is intended to protect the integrity of the judicial system rather than to protect litigants from allegedly improper action by their opponents. It does so by preventing a party and its counsel from playing fast and loose with the courts.

*Turner v. Stuck*, 778 N.E.2d 429, 432 (Ind. Ct.App.2002) (citations and quotations omitted).

 Here, the City contends that because JNRU argued that declaratory relief was improper in previous litigation, it should be judicially estopped from seeking such relief in this case. However, contrary to the City's contentions, JNRU has not taken inconsistent positions regarding the propriety of a declaratory judgment. As we explained in our opinion in *City of North Vernon*, 725 N.E.2d at 900, in the previous action, the City sought a declaratory judgment against JNRU and IDEM and:

... requested that the trial court determine that the JNRU was not validly

formed as a regional utility because it had failed to comply with proper statutory and regulatory procedures concerning its formation and operation, and, therefore, the JNRU had no right, title, claim, or interest which would prevent the City from annexing property contiguous to the City's corporate boundaries and to provide wastewater treatment in these areas.

In response, JNRU filed a motion to dismiss and argued that because the City had failed to follow the proper administrative procedures for seeking judicial review of IDEM's order, the trial court lacked subject matter jurisdiction over the City's complaint. JNRU's position that declaratory relief was not proper in that case was based solely on the trial court's lack of subject matter jurisdiction. JNRU's current claim that declaratory relief is proper based on the parties' dispute over who may serve the School is not inconsistent with its position in the previous action. Thus, judicial estoppel does not apply here.

Affirmed.

ROBB, J., and MATHIAS, J., concur.