Dave HOMER and Annette Homer,
Appellants–Plaintiffs,

v.

J.M. BURMAN, d/b/a Burman Electric
Service, Appellee–Defendant.

No. 27A02–0009–CV–568.

Court of Appeals of Indiana.

Feb. 9, 2001.

Rehearing Denied April 2, 2001.

Shane Eric Beal, Marion, IN, Attorney for Appellant.

Brian F. McLane, Marion, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Dave and Annette Homer ("the Homers") appeal the trial court's negative judgment in favor of J.M. Burman d/b/a Burman Electric Service ("Burman Electric").

We reverse and remand.

### ISSUE

Whether the trial court's judgment is contrary to law.

### FACTS

During the month of August 1999, the Homers hired Burman Electric to perform electrical work on their rental property located at 432 North Boots in Marion. Burman was initially hired to install an electric box at the rear of the house. However, after Stephanie Clevenger ("Clevenger"), the Homers' tenant, complained of malfunctioning lights in the kitchen and dining room, the Homers hired Burman Electric to rewire the entire house. The Homers took out a loan and paid Burman Electric $2,650.00 to complete the project.

During the home improvement project, problems developed. First, when power was reconnected to the house, Clevenger's "T.V., VCR, [her] son's Playstation," and her satellite receiver were destroyed. (R. 58). Burman's insurance carrier reimbursed her in the amount of $1,096.13. Subsequently, Clevenger's hair dryers, clocks, and lamps would repeatedly burn out. She and the Homers also noticed holes from drilling were left uncovered in the ceiling. The Homers also noticed that the furnace was not reconnected and that "plaster was damaged around the electrical outlets." Mr. Homer also noticed exposed wires, not rated for exterior use, running from the attic across the roof line and down, along aluminum siding, to the back porch.

Believing that the required permits had been acquired, Mr. Homer then called Michael Bowen ("Bowen"), a building inspector, to look over the property. Bowen stated that no permit had been issued and that the outdoor wiring was not consistent with the electrical building code. He said

that if the outdoor wiring ever became worn or cut, the aluminum siding could become electrified. When Mr. Homer contacted Burman Electric about the problems, Burman Electric offered to return and "fix some of the problems." (R. 81). However, Mr. Homer declined the offer fearing that further damage would be done.

On October 26, 1999, the Homers filed a complaint in the Grant Superior Court No. III, Small Claims Division alleging breach of contract and seeking unspecified damages, plus reasonable attorney fees. Evidence was heard before a Commissioner on May 12, 2000.

At trial, the Homers introduced photographs documenting the shoddy work done to the house. They also introduced as plaintiff's exhibit 2, a four-page document containing (1) the building inspector's reasons why the house did not pass inspection; (2) copies of the estimates; and (3) cancelled checks.[1] Clevenger testified about the difficulties she experienced and the property she had lost. She also detailed the locations of the holes left in the ceiling. Carl Burman, Jr. ("Mr. Burman") admitted that the required building permit was not obtained before rewiring the house and that the house did not pass inspection. Further, he testified that "[b]ecause of this job," employees that performed most of the work were no longer employed by Burman Electric. (R. 94). Mr. Burman also admitted that he was unaware of the Indiana Home Improvement Contracts Act ("the Act"), and he did not provide the Homers with a home improvement contract.

Additionally, Mr. Homer testified that he received an estimate of $2,500.00 from Dick Garriott, another electrician, to repair the work done by Burman Electric. He also testified that because the house could not be occupied, he had lost two months rental income at a rate of $300 per month.

After hearing the evidence, the Commissioner made the following statement:

> I don't know if we have to rewire the house or not.... I haven't heard anybody say that, that somebody that knows anything about electricity went in and tested it to see that the wiring that was done is screwed up. Other than the fact that these appliances blew up, which is.... So, I don't know. Um, I, I will take it under advisement.

(R. 116–117). On May 24, 2000, judgment was entered against the Homers.

## DECISION

The Homers argue that the judgment of the trial court is contrary to law because "the evidence presented at trial clearly established that Burman's workmanship was poor" and that they are entitled to damages. The Homers' Brief at 4. We agree.

Indiana Small Claims Rule 8(A) provides for informal hearings with relaxed rules of procedure in order that speedy justice can be dispensed. As a result, we are particularly deferential to the trial court's judgment. *Mayflower Transit, Inc. v. Davenport*, 714 N.E.2d 794 (Ind.Ct.App.1999). However, we will reverse a negative judgment when it is contrary to law. *Id.* "A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is opposite from that reached by the trial court." *Id.* at 798.

The law concerning contracts is well settled in Indiana. An offer, acceptance, plus consideration make up the basis for a contract. *Bain v. Board of Trustees of Starke Memorial Hosp.*, 550 N.E.2d 106 (Ind.Ct.App.1990). "A mutual assent or a meeting of the minds on all essential elements or terms must exist in order to

---

1. We note that although plaintiff's exhibit 2 was admitted into evidence, it is not in the record.

form a binding contract. Assent to those terms of a contract may be expressed by acts which manifest acceptance." *Pinnacle Comp. Serv. v. Ameritech Pub.*, 642 N.E.2d 1011, 1013 (Ind.Ct.App.1994) (citations omitted).

The goal of contract interpretation is to "give effect to the parties' intent." *Indiana Port Comm'n v. Consolidated Grain and Barge Co.*, 701 N.E.2d 882, 887 (Ind.Ct.App.1998) *trans. denied.* Unless the contract provides otherwise, it is implied that the parties intend to comply with all applicable statutes and city ordinances in effect at the time of the contract. *Miller v. Geels,* 643 N.E.2d 922 (Ind.Ct. App.1994) *trans. denied.* Further, "[i]n a contract for work, there is an implied duty to do the work skillfully, carefully, and in a workmanlike manner. Negligent failure to do so is a tort, as well as a breach of contract." *Hagerman Const., Inc. v. Copeland,* 697 N.E.2d 948, 958 (Ind.Ct.App. 1998) (citations omitted) *trans. denied.*

In this case, we first examine whether a contract existed. Although the estimate (contract) is not in the record, the evidence shows that the Homers paid Burman Electric $2,650.00 to rewire their home. Burman Electric accepted the payment and began work. Therefore, because we have an offer, acceptance, consideration, and a manifestation of mutual assent, a contract was in existence.

Next, we determine what duties were imposed upon Burman Electric. When this contract was executed, Burman Electric became duty bound to perform the work "skillfully, carefully, and in a workmanlike manner." *Id.* at 958. Furthermore, it was bound to abide by the applicable electric code and the Act, both of which were in existence when the contract was formed. IND.CODE § 24–5–11.

Concerning Burman Electric's duty to perform the work in a skillful and workmanlike manner, the evidence clearly shows a breach of that duty. There were photographs and testimony from the Homers and Clevenger about drilling holes left in the ceiling, the unconnected furnace, and damaged plaster. Further, Clevenger testified about the damage to her property and the continuing problem of hair dryers, clocks, and lamps burning out. Burman Electric clearly breached the contract to rewire the Homer's house by not performing the work in a skillful and workmanlike manner.[2]

Concerning Burman Electric's duty to follow the electric code, the evidence clearly shows multiple violations. Mr. Burman admitted that Burman Electric did not acquire the appropriate building permits. He also testified that the project did not pass inspection by Mr. Bowen. Again, the evidence is clear that a breach of contract occurred because the parties impliedly intended the work to be completed in accordance with the appropriate electric code. *Miller,* 643 N.E.2d 922.

Concerning Burman Electric's duty to follow the Act, the evidence shows

---

2. Burman Electric cites *Wagner Const. Co., Inc. v. Noonan,* 403 N.E.2d 1144 (Ind.Ct.App. 1980) as holding that before a breach of warranty or contract can be found, a contractor must be given the opportunity to remedy or cure the defect. Indeed, we did hold that "before a purchaser of a residence may seek damages from the builder-vendor for an alleged breach of implied warranty of fitness for habitation, ... the purchaser must, as a condition precedent to recovery, give notice of the defect and alleged breach of warranty to the builder-vendor thus affording the builder-vendor an opportunity to remedy the defect." *Id.* at 1150. However, the instant case does not involve the purchase of a residence or the implied warranty of fitness for habitation. Therefore, that case is inapplicable. Additionally, concepts such as breach of warranty and curing of a defect are part of the Uniform Commercial Code governing the sale of goods. *See* IND.CODE § 26–1–2–312; 26–1–2–313; 26–1–2–314; 26–1–2–508. The UCC also does not apply here because the predominant thrust of the contract was the provision of services, not goods. *Insul–Mark Midwest, Inc. v. Modern Materials, Inc.,* 612 N.E.2d 550 (Ind.1993). Therefore, we apply common law and the applicable remedies under contract law.

that the statute was violated. "Through the Act, the legislature sought to protect consumers by placing specific minimum requirements on the contents of home improvement contracts. Accordingly, we will hold the contractor to a strict standard." *Mullis v. Brennan,* 716 N.E.2d 58, 65 (Ind.Ct.App.1999). The Act requires home improvement suppliers performing any alteration, repair, or modification to a residential property in an amount greater than $150.00 to provide the customer with a home improvement contract. IND.CODE §§ 24–5–11–1; 24–5–11–3; 24–5–11–4; 24–5–11–6; 24–5–11–10. The Act also makes the home improvement contract "subject to obtaining the necessary licenses or permits prior to any work commencing." IND.CODE § 24–5–11–9. The Act further requires the following provisions to be included in the contract before it is signed by the consumer: (1) the name and address of the consumer and the residential property; (2) the name and address of the home improvement supplier; (3) the date of the contract; (4) a reasonably detailed description of the work to be done; (5) the approximate start and stop dates; (6) a statement of contingencies; (7) the contract price; and (8) signature lines. IND.CODE § 24–5–11–10. Further, before the consumer signs the contract, the home improvement supplier must agree to the terms by signing the contract. IND.CODE § 24–5–11–11. Finally, "[a] home improvement supplier who violates this chapter commits a deceptive act that is actionable by the attorney general or by a consumer under IC 24–5–0.5–4 and is subject to the remedies and penalties under IC 24–5–0.5." IND. CODE § 24–5–11–14.

In this case, the evidence clearly shows that Burman Electric did not comply with the Act. Mr. Burman not only testified that he was unaware of the Act, but that he did not provide a home improvement contract; nor did he acquire the appropriate building permits. As a result, Burman Electric committed a deceptive act, and the Homers were entitled to bring an "ac-

tion for the damages actually suffered...." IND.CODE § 24–5–0.5–4(a).

The evidence shows that Burman Electric did not perform the work in a skillful and workmanlike manner, and it failed to follow the appropriate electric code and the Act. As a result, the trial court's judgment for Burman Electric was contrary to law. We reverse and enter judgment for the Homers, and remand for a hearing on the issue of damages and reasonable attorney fees. *See Mullis,* 716 N.E.2d 58; IND.CODE § 24–5–0.5–4(a).

RILEY, J., and ROBB, J., concur.