Gary M. POTTER, Appellant–Plaintiff,

v.

Richard John HOUSTON, Appellee–Defendant.

No. 53A05–0506–CV–359.

Court of Appeals of Indiana.

May 16, 2006.

242

Guy R. Loftman, Bloomington, for Appellant.

Jon C. Spurr, Spurr Law Offices, P.C., Scott E. Racop, Racop Law Offices, P.C., Terre Haute, for Appellee.

**OPINION**

FRIEDLANDER, Judge.

Gary Potter brings this appeal stemming from a series of actions he filed regarding an easement granted in favor of Richard Houston and Houston's predecessors. Potter raises one issue: Is "timbering" an agricultural use of land? *Appellant's Brief* at 3. Houston raises one issue on appeal: He requests appellate attorney's fees based upon Potter's alleged frivolous appeal that is "a part of a pattern of abusive filings made on behalf of [Potter] constituting bad faith." *Appellee's Brief* at 11.

We affirm the judgment, and we remand the cause for an award of attorney's fees to Houston.

Potter did not include in the record the transcripts or statements of evidence from the trial held on August 19, 2004.[1] Further, Potter did not include in his Appendix the trial court's order after the trial, dated October 18, 2004, that set out in great detail the underlying facts with citations to exhibits, the applicable law with citations to authority, as well as the answer to Potter's question on appeal. Houston, however, did include this order in his Appendix. Because we have no other official source for the information, and it aids our review, we recite the order in nearly its entirety:

> In 1986 Gary Potter ... sought the vacation of the end portion of what was then called Arbutus Road, and that ran along the east and to the south of [Potter's] property, which was commonly known as ... 751 S. Twinleaf Trace. The road provided access to a parcel of land owned by Catherine Royer, now deceased. Richard J. Houston ... inherited Mrs. Royer's property, through his wife, now also deceased, and is the current owner of the parcel and other, adjacent parcels. When Mrs. Royer learned of the request to vacate the road through a local news story, she filed a remonstrance opposing the vacation of the road on the ground that, if granted, she would no longer be able to access her property by means of a public way. Mrs. Royer was specifically concerned with her ability to continue to use the road for her daughter's horseback riding school, and as *an access point from which hay and timber could be extracted from her property once harvested.*
>
> [Potter] then entered into an agreement with Mrs. Royer on August 29, 1986 ("1986 Agreement") that provided for Mrs. Royer's withdrawal of her remonstrance. The 1986 Agreement stated in relevant part that, while the parties had not "fully resolved the existing questions concerning access," the parties had "determined that *vacation of a portion of Arbutus Church Road sought by the Potters will have no effect on any portion of any roadway along which Mrs. Royer may have access rights.*" The request to vacate the road was again put forward by [Potter] at a subsequent County Commissioner session on September 12, 1986. Mrs. Royer attended the meeting and asked the Commission if the vacation "would effect her in any way as far as ingress or egress." She was assured by Guy Loftman, [Potter's] attorney and the draftee of the 1986 Agreement, that the vacation would "absolutely not" effect her ingress or egress, and the Commission then unanimously approved the motion to vacate.
>
> Mrs. Royer's and her heirs's right to access the southern property via the roadway, however, has continued to remain an issue of ongoing contention between the parties. [Potter] testified that in 1988, with the intention of blocking access to the roadway, he erected a chain fence. [Houston] removed the chain sometime in 1993. After 1993, and up to January of 2003, [Potter] placed other obstructions in the disputed easement, including, an 8–foot barrier fence, swing-set, sandbox, shrubbery, and by

---

**1.** Potter did include a Statement of Evidence, in two paragraphs, summarizing subsequent hearings. Potter argues that Houston and this court are bound by only that evidence and must not consider the evidence within the trial court's rulings from the trial. At best, Potter is mistaken. Additional discussion of this matter appears in the body of the decision as it relates to the award of attorney's fees to Houston.

parking a motor vehicle. During these periods, [Houston's] family continued to use the roadway on [a] semiannual basis; crossing the land on horseback and on foot. [Houston] or members of his family would occasionally encounter [Potter] or his wife. On at least one occasion, sometime in 1997, [Houston] was confronted by [Potter's] wife who asserted that he was trespassing on private land. [Houston] replied that he was not trespassing but was simply using his easement.

On January 31, 2003, [Houston] cut down the barrier fence erected by [Potter] to block access to the roadway and cleared yew bushes and a wood pile on [Houston's] property along the path of the disputed easement. In response, [Potter] filed suit in small claims court for damages and trespass. Upon motion and amended answer and counterclaim from [Houston] the action was moved to plenary court. A partial grant of a motion for summary judgment by [Potter] limited the issues at trial to: 1) whether the 1986 Agreement established an implied easement; and 2) if the 1986 Agreement did establish an implied easement along the disputed roadway, whether such easement remains valid today, and, if not, when the easement was destroyed.

*Appellee's Appendix* at 1–2 (citations omitted) (emphasis supplied).

The trial court's order then analyzed the law of implied easements with regard to vacation of a public roadway and blocking access of property owners. The trial court determined that, based upon Potter's and his attorney's assurances, Houston's predecessors abandoned their remonstrance against Potter's proposed vacation of the public roadway in exchange for the preservation of their rights of access as stated in the 1986 Agreement. The trial court concluded:

> There can be no dispute that both [Potter's] and [Houston's] family, along with any other driver so inclined, had a right to the use of Arbutus Road prior to its vacation. The 1986 Agreement can be interpreted in no other way than to foresee the subsequent vacation as a foreclosure of all public rights to the road *except for* those held by the signing parties: [Potter] would gain the roadway, or an assigned portion of the roadway, as his personal property, and the Royer[s] would continue to be able to use the roadway as they had before, to access their adjacent land.
>
> The Royer[s] objected to the vacation of the road because it would block access to their property. Their promise to forgo the objection was obtained by [Potter] in consideration of the 1986 Agreement's assurance that the subsequent vacation of the road would have "no effect" on the Royer[s] ability to continue to exercise their right of access. The Court finds that the 1986 Agreement and the subsequent vacation of that portion of Arbutus [R]oad that bordered [Potter's] land, gave rise to an implied easement that allowed continued use of the roadway in order to access the Royer property.

*Id.* at 3 (emphasis in original).

After determining that the 1986 Agreement gave rise to an implied easement, the trial court analyzed Potter's contention that any easement had been extinguished by his adverse possession of the former public access roadway. The trial court set out the law of adverse possession and set out the facts that demonstrated that Houston had continuously used the easement, including by removing barriers erected by Potter. The trial court concluded that Potter's use was not exclusive or continu-

ous for the statutory period; thus, the easement remained intact.

The trial court's order stated:

In ruling that the easement established by the vacation of the public road in 1986 survives, the Court does not rule that the easement extends to the entire area previously occupied by the public roadway. The easement is necessarily limited to what is needed to allow [Houston] access to and from his adjacent property.[2] This seems reasonably to require a single-lane pathway, the primary purpose of which would be for travel on foot or horseback, but that is wide enough to accommodate the occasional truck or hay machine.

## ORDER

The parties herein having appeared at the bench trial in this matter on August 19, 2004, and the Court having heard the testimony of witnesses and reviewed the evidence presented and being duly advised, now ORDERS that [Houston] is entitled to a right of way easement across [Potter's] land as established by the agreement and understanding of [Potter] and [Houston's] family regarding the vacation of Arbutus Road in 1986. It is FURTHER ORDERED that the easement is to be limited to a single-lane pathway as described herein. Parties shall jointly submit the documents necessary for the recordation of the easement to this Court for final approval within thirty (30) days of the date of this Order.

*Appellee's Appendix* at 5–6 (footnote supplied).

On November 12, 2004, Potter filed his Verified Motion for Emergency Supplemental Order and Clarification setting out perceived violations by Houston, including: Houston's use of the easement prior to its recordation; Houston's use of a car instead of a truck; and the rate of speed of the car.

In his motion for clarification, Potter urged that the easement's use was "limited to travel on foot or horseback, and to occasional use by trucks, hay machines and other agricultural equipment reasonably necessary to serving the agricultural needs of the valley portion of Houston's real estate, such as cutting hay." *Id.* at 11. A review of the October 18, 2004 order re-

---

**2.** On the same day that Potter filed his reply brief, Potter filed his "Verified Motion to Strike False Statement in Brief Not Supported by the Record." In his motion, Potter quotes a portion of a sentence in Houston's Appellee's Brief and states: "Houston misstates facts which are outside the record. He states that the easement across Potter's land is 'an implied easement representing the only reasonable means of ingress and egress from the property.'" *Motion to Strike* at 1. Potter asserts that the offending portion of the sentence is untrue based upon his research of a "Driveway Permit" sought by Houston for the purpose of "Logging", in which Houston included the following description of the location: "1/2 mi off Bender Rd on Left address ..., also have alternate drive off Twinleaf ... side of Arbutus church in front of Gary Potter's log home". *Id.* at 5. Contrary to Potter's contention, Houston did not assert matters outside of the record. The matters outside of the record are asserted by Potter in his motion. As such, we will not consider the permit. Potter's failure to present the transcripts or statements of evidence from the trial prevents us from reviewing the evidence in its entirety.

Further, Potter's complaint appears to be incorrect. The foregoing section of the order, included in Houston's Appendix states that Houston's easement is limited to the area "needed" to allow him access to his property. *Appellee's Appendix* at 6. The portion of Houston's brief of which Potter complains appears to paraphrase that portion of the order while drawing parallels with another case. Potter's motion to strike serves as another example of unfounded allegations that burden this appeal.

veals no such limitation or mention of "agricultural equipment reasonably necessary to serving the agricultural needs of the valley portion of Houston's real estate, such as cutting hay." *Id.* at 5–6. Instead, in the October 18, 2004 order, the trial court's factual recitation referred to the roadway "as an access point from which hay *and timber* could be extracted from [Houston's] property once harvested." *Id.* at 1 (emphasis added). Potter's motion engrafted the term "agricultural" onto the easement provision, but it did not suggest that the term should exclude the extraction of timber from Houston's property or any other prior use of the easement as had been specifically referenced by the trial court in its order.

According to the CCS, on November 15, 2004, the trial court granted the Emergency Supplemental Order and Clarification. In pertinent part, the order stated:

A. Defendant Richard John Houston shall refrain from going onto Gary M. Potter's land prior to the entry of a final judgment establishing the precise location and extent of his easement across Gary M. Potter's real estate.

B. This court intends the easement's use to be limited to travel on foot or horseback, and to occasional use by trucks, hay machines and other agricultural equipment reasonably necessary to serving the agricultural needs of the valley portion of Houston's real estate, such as cutting hay.

*Id.* Accordingly, the trial court adopted the "agricultural needs" language drafted by Potter.

On November 22, 2004, the trial court entered its order setting out the legal description of the easement and stating:

Pursuant to the Court Order dated October 18, 2004 in the above cause, this

court does hereby grant to Defendant Richard John Houston (Houston) an easement for a roadway across certain real estate owned by Plaintiff Gary M. Potter (Potter). The easement shall run with Houston's land and inure to the benefit of Houston, his heirs and assigns.

*Appellant's Appendix* at 14. The trial court set out the language from the November 15, 2004 order and the legal descriptions relevant to the easement. Potter and the trial court thereafter referred to the November 22, 2004 order as the final order. Potter notes in his briefs that neither party appealed that order.

Potter continued to file various motions for injunctions and motions to correct error. The trial court set a hearing on the matters for March 7, 2005. An order entered on that date provided:

1. Neither [Houston], nor his agents or representatives, have engaged in any activity that would constitute a substantial deviation from the terms of the final easement entered by this Court on November 22, 2004;

2. Per the stipulation by the parties, the use of the easement by [Houston] has not cause[d] any economic harm to [Potter]; and

3. Timbering is a valid agricultural use of the property contemplated under the terms of the easement.

The Court now Orders that [Potter's] Motion for Permanent Injunction is denied.

*Id.* at 13.

On April 6, 2005, Potter filed a motion to correct error urging that "agricultural use" does not include "timbering" and asserting that the trial court erred by failing to enjoin "timbering". *Id.* at 24. On April 8, 2005, Potter filed his "Motion for Relief From Judgment and For Specific Perform-

ance and for Permanent Injunction." *CCS* at 1. Also on April 8, 2005, the cause was transferred to a different court.

■ The new trial court set the matter for a hearing on Potter's motion for relief from the judgment and motion to correct error for May 27, 2005. The new trial court issued an order on June 23, 2005 denying Potter's motion to correct error.[3]

### 1.

■ In a four-part argument, Potter contends that "timbering is not an agricultural use of land" and urges that the trial "court had no authority to amend its November 22, 2004 judgment on March 7, 2005 by changing the permitted use of the easement beyond the agricultural limitation provided in the original judgment." *Appellant's Brief* at 17.

Potter's argument rests upon internet and dictionary definitions of agriculture that he contends are not so broad as to include "timbering". We commence by noting that "timbering" means "a set of timbers" or "one used for support (as of a roof or wall)". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY

2394 (3d ed.1976). We assume here that "timbering" was used by the trial court and the parties as a synonym for "logging" or the act of extracting timber.

■ That said, the term "agriculture" is intended to be defined broadly and includes forestry and harvesting timber, as well as the items used in those tasks. *See United States v. Border Brokerage Co., Inc.*, 706 F.2d 1579 (Fed.Cir.1983) (citing *United States v. Norman G. Jensen, Inc.*, 64 C.C.P.A. 51, 550 F.2d 662, 664–68 (C.C.P.A.1977) and its rationale that reviewed Congressional Acts and dictionary definitions to conclude that "agriculture" or "agricultural" includes harvesting timber crops). Further, when assessed against the backdrop of the trial court's specific finding that historically the area of the easement had been used "as an access point from which hay and timber could be extracted from [Houston's] property once harvested", *see Appellee's Appendix* at 1, 4, unquestionably, "agriculture" or "agricultural needs" are readily defined to include logging or extracting timber—at least in the context of this case.

**3.** As to Potter's Motion for Relief from Judgment and for Specific Performance and for Permanent Injunction, the new trial court concluded:

 A. The Potters['s] residence presently encroaches into the easement owned by Houston, which is recorded in the office of the Monroe County Recorder, State of Indiana, on December 1, 2004, as Instrument Number IN 2004025801 EASE.

 B. That nothing shall be disturbed as to that encroachment.

 C. That Potter shall not expand or add or do anything to change the encroachment into the easement from this date forward.

 D. That Houston shall not do anything to damage the property that is in fact encroaching.

*Appellant's Appendix* at 30. Inasmuch as Potter's issue on appeal is directed solely to the motion to correct error as to the meaning of agricultural needs, we need not address the new trial court's conclusions as to the Motion for Relief from Judgment and for Specific Performance and for Permanent Injunction. We do, however, feel compelled to memorialize the new trial court's findings and conclusions, along with the recorded easement based upon Potter's litigiousness and demonstrated persistence in attempting to extricate himself from the 1986 Agreement and the trial court's orders granting and enforcing the easement.

Further, we note that a motion for relief from a judgment can be granted only when extraordinary circumstances are established. *See Counceller v. Counceller*, 810 N.E.2d 372 (Ind.Ct.App.2004). Such motions are not an appropriate substitute for appeal. *Id.*

Moreover, through his motion for clarification, Potter requested that the trial court engraft the term "agricultural" onto the trial court's order and ignored the court's acknowledgement that the easement had been used to extract timber and hay. Then, as noted by Houston, after drafting specific language and having it adopted by the trial court, Potter sought to further limit Houston's use of the easement by defining the language in a manner that conflicts with the clear intent of the trial court's October 18, 2004 order.

The invited error doctrine is applicable here. "A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct." *Shipley v. KeyBank Nat. Assoc.*, 821 N.E.2d 868, 879 (Ind.Ct.App.2005). An invited error is not subject to review by this court. *Shipley v. KeyBank Nat. Assoc.*, 821 N.E.2d 868. In *Shipley*, the party raised the issue of the return of attorney fees and argued that the fees should not be returned to a party in the proceedings but should be returned to the Huntington Circuit Court for it to determine to whom the fees should be distributed. The trial court did exactly as the party requested and ordered that the attorney return the fees to the Huntington Circuit Court for it to distribute. We determined that the party invited error and, thus, the ruling was not reviewable on appeal. *Id.*

Here, after the trial, the court's order specifically found that the easement had been used for the extraction of timber. Thereafter, Potter asked for a clarification that engrafted upon the order a new term with the same meaning. Unsatisfied with his own language, Potter then mounted collateral attacks on the judgment after the time for appealing the November 22, 2004 order had lapsed.[4] Potter received exactly what he asked for in the motion for clarification. If his desire was to limit Houston's use of the easement by defining his own language in a manner different than its commonly understood meaning, he could have so stated in his motion for clarification. Potter invited any error as to the definition of terms he asked the court to adopt.

Given the course of these proceedings, we believe it is necessary to make every effort to leave no room for doubt as to the meaning of this decision. The term "timbering" has been treated in this decision as the parties and the trial court used the term—as a synonym for logging or the act of extracting timber. Though we need not

---

4. The specter of finality looms large over these proceedings. Potter acknowledges that the November 22, 2004 order was not appealed. No ruling appears on the CCS as to Potter's first motion to correct error, filed December 9, 2004. Because of the numerous subsequent motions filed by Potter, it is difficult to determine whether and when the motion should have been deemed denied. *See Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d 285 (Ind.2000) (ruling on a motion to correct error after the expiration of the prescribed time limits is not necessarily a nullity, but is voidable and subject to enforcement of the deemed denied provision of Ind. Trial Rule 59). Potter urges that he is appealing from the March 7, 2005 order specifying that "[t]imbering is a valid agricultural use of the property contemplated under the terms of the easement." *Appellant's Appendix* at 13. An argument could be made that the October 18, 2004 order was final and appealable. *See Ross Brothers Constr. Co., Inc. v. Internat'l Steel Serv., Inc.*, 283 F.3d 867 (7th Cir.2002) (whether a district court decision is considered final and appealable depends upon whether the decision ends the litigation on its merits and leaves nothing more than the execution of the judgment). Here, the October 18, 2004 order arguably decided the merits and left nothing more than the filing and recording of the easement. Based upon the record on appeal, we cannot trace the dates, rulings, and filings with sufficient precision to allow a determination that the time for appeal was missed.

address the merits because any error in the trial court's decision that "timbering" is a valid "agricultural use" of the easement was an invited error by Potter, we note that the reference to extracting timber made in the trial court's October 18, 2004 order, coupled with a commonly understood meaning of agriculture, left no room to argue that extracting timber was not a valid "agricultural use" of the easement. Procedurally and on the merits, Potter's appeal cannot succeed.

### 2.

 We turn to Houston's request for appellate attorney's fees. In pertinent part, Ind. Appellate Rule 66(E) provides that a court on review "may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." Pursuant to Ind.Code Ann. § 34–52–1–1 (West 1999), courts are authorized to award attorney's fees when a party continues to litigate a claim after it becomes frivolous, unreasonable, or groundless.

 In *Orr v. Turco Mfg. Co.*, 512 N.E.2d 151 (Ind.1987), applying the former appellate rule, our Supreme Court cautioned that the determination to allow appellate attorney's fees should be tempered so as not to discourage innovation or periodic reevaluation of controlling precedent. *See Countrywide Home Loans, Inc. v. Rood*, 784 N.E.2d 1050, 1056 (Ind.Ct.App.2003). "Hence, the discretion to award attorney fees under App. R. 66(C) is limited to instances 'when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.'" *Boczar v. Meridian St. Found.*, 749 N.E.2d 87, 95 (Ind.Ct.App.2001) (quoting *Orr v. Turco*, 512 N.E.2d at 152). Mindful of our Supreme Court's directive to exercise great restraint when determining that such an award is warranted, we nonetheless do so here. *See Countrywide Home Loans, Inc. v. Rood*, 784 N.E.2d 1050.

Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found.

*Thacker v. Wentzel*, 797 N.E.2d 342, 346–47 (Ind.Ct.App.2003) (citations omitted).

In *Shepherd v. Truex*, 819 N.E.2d 457 (Ind.Ct.App.2004), we found procedural and substantive bad faith based, *inter alia*, upon our inability to perceive any plausible explanation for the appellant's incessant filing of lawsuits in the matter. We also determined that the appellant had committed procedural bad faith based upon, in part, the "the inordinate time this Court was required to spend" to decipher the thrust of the appeal and due to the appellant's failure to comply with the appellate rules. *Shepherd v. Truex*, 819 N.E.2d at 464.

Potter's appeal suffers from numerous procedural deficiencies. His brief contains a portion designated as the Statement of the Case. Our appellate rules provide that the Statement of the Case "shall briefly describe the nature of the case, the course of the proceedings relevant to the issues

presented for review, and the disposition of these issues by the trial court . . . ." Ind. Appellate Rule 46(A)(5); *Ramsey v. Review Bd.,* 789 N.E.2d 486, 488 (Ind.Ct.App. 2003). Potter's Statement of the Case excludes the trial court's detailed order dated October 18, 2004. Potter includes argument and explanations regarding motions he filed, but excludes most dates, rulings, and other pertinent information regarding the course of the proceedings—all of which he left to this court to piece together from the CCS.

Potter's Statement of the Facts relies entirely on his Statement of the Evidence approved by the trial court that summarized in two short paragraphs numerous filings, hearings, and rulings. The Statement of the Facts excludes the detailed facts and considerations made in the trial court's October 18, 2004 order. Moreover, Potter complains that Houston was remiss in his inclusion of the enlightening order that contains our only insight into the trial court's evidentiary rulings. Potter's Statement of the Facts is woefully lacking. *See* App. R. 46(A)(6); *Ramsey v. Review Bd.,* 789 N.E.2d 486.

As noted above and related to the deficiency as to the Statement of Facts, Potter argues that Houston and this court are bound to consider only the evidence contained in the Statement of the Evidence approved by the trial court that summarizes in two paragraphs the facts from the hearings after the trial. He baldly asserts that we must not consider the evidence within the trial court's rulings from the trial. We fail to understand how Potter concluded that the "written opinion, memorandum of decision, or findings of fact and conclusions thereon relating to the issues

raised on appeal", App. R. 50, should not be included in his Appendix. Potter failed to comply with Ind. Appellate Rule 50 regarding the content of appendices.[5]

Potter's appellate arguments and arguments made in his motion to strike a portion of Houston's brief are illogical and puerile. Potter has steadfastly ignored unfavorable factual determinations and rulings. The course of the proceedings, including numerous attacks on orders and judgments that can be fairly characterized as collateral, is difficult to sort out. One overarching theme is clear: Potter's motions and arguments ignore the import of the trial court's orders and are calculated to cause great expenditure of time and money by Houston in attempting to enjoy the use of the easement. In so doing, Potter has caused a great outlay of resources by Houston, his counsel, multiple trial courts, and this court on review. For all these reasons, we find Potter's appeal to be frivolous and without merit. *See Montgomery v. Trisler,* 814 N.E.2d 682 (Ind.Ct.App.2004). Enough is enough.

Potter's conduct comes at a cost. He has committed both procedural and substantive bad faith. Accordingly, the cause is remanded for a determination of appellate attorney's fees to be awarded to Houston.

Judgment affirmed, and the cause is remanded for calculation of appellate attorney's fees to Houston.

VAIDIK, J., concurs.

SULLIVAN, J., concurs in result.

---

5. App. R. 50 provides that an appellant's Appendix "shall contain . . . (f) pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal; . . ." *See Yoquelet v. Marshall County,* 811 N.E.2d 826, 828–830 (Ind.Ct.App.2004).