**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
May 29 2014, 10:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID VAN GILDER**
Van Gilder & Trzynka, P.C.
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT J. PALMER**
May * Oberfell * Lorber
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HOLLY and CHRISTOPHER DUNN, HOLLY and BENJAMIN ROTHENBUSH, and TOMI and MICHAEL MEYER, | ) ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 02A03-1307-PL-269 |
| KATHRYN DAVIS and FOR THE CHILDREN MEDICAL MISSION FOUNDATION, INC., | ) ) ) | |
| Appellees-Defendants. | ) ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Robert C. Probst, Senior Judge
Cause No. 02D01-1104-PL-142

**May 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Christopher and Holly Dunn ("the Dunns"), Benjamin and Holly Rothenbush ("the Rothenbushes"), and Michael and Tomi Meyer ("the Meyers") (collectively, "Appellants") appeal the trial court's grant of summary judgment to For the Children Medical Mission Foundation, Inc., ("the Foundation"). We affirm.

## Issues

Appellants raise two issues, which we restate as:

I. whether the trial court properly granted summary judgment to the Foundation on Appellants' breach of contract claim; and

II. whether the trial court properly granted summary judgment to the Foundation on Appellants' fraud claim.

Additionally, the Foundation argues that it is entitled to appellate attorney fees pursuant to Indiana Appellate Rule 66(E).

## Facts

The Foundation is a tax exempt organization that helped provide international orphans with medical care and matched them with host families in the United States. The host families had the option to adopt the children through a licensed adoption agency. Kathryn Davis is the executive director of the Foundation. The Dunns, the Rothenbushes, and the Meyers each agreed to host a child from the Philippines through the Foundation. Each family signed a Host Family Agreement that provided:

> In recognition of the fact that Kathryn and Gary Davis, of For the Children International Medical Mission Foundation, Inc. . . . are the legal guardians of the child

2

placed with us for us to act as host parents during the child's medical treatment, and acknowledging that Kathryn and Gary Davis and the Foundation are legally responsible for the child during the treatment, including compliance with all rules and regulations of government agencies and departments in both the United States and the child's home country, we, the undersigned, acting as host parents, agree as follows:

\* \* \* \* \*

3. The host parents agree that on the 30th day after the child is placed with the host parents, if the host parents intend to apply for formal adoption, the host parents will provide the Foundation [sic] indicating an unqualified intent to adopt. The host parents agree that if it is their intent to adopt, they will use the services of a licensed adoption agency.

    The host parents acknowledge that at no time are they required to apply for formal adoption of the child. In the event that the host parents choose not to adopt, or fail to provide the intent to adopt letter to the Foundation on the thirtieth day after the child is placed with the host parents, the host parents, at the discretion of the Foundation, may or may not continue to host the child for the duration of any needed medical treatment, after which the child will be placed with another family for a possible adoption or returned to the Philippines.

4. In the event that the host parents choose to apply for adoption, they agree to have all necessary documents returned to the adoption agency of their choice within five months of submitting their letter of intent to adopt. These documents include, but are not limited to, all documents required by the Filipino government. The host parents further agree to comply with any other time restrictions for submission of all necessary documents that may be imposed by their chosen adoption agency.

\* \* \* \* \*

3

6.  The host parents acknowledge that all adoption procedures and fees are in no way affiliated with, or determined by the Foundation, which is a completely separate and distinct entity from any adoption agency. The host parents also acknowledge that at no time does the Foundation, or anyone associated therewith, have any influence on the host child's governmental or agency requirements or errors. Any questions or comments regarding the host parents' relationship with the adoption agency must be directed towards the agency, not the Foundation, unless it is directly related to the child's medical condition.

* * * * *

8.  The host parents acknowledge that the Foundation, and Gary and Kathryn Davis, are the guardians of the child while in the United States and will hold the child's passport until the child returns to the Philippines. . . .

9.  The host parents agree that upon admission of the child to the hospital, if the letter of intent to adopt has not yet been written, that the Foundation's name, For the Children International shall be listed as the guarantor for said child. If intent to adopt letter has been submitted, the host parents agree to list their names as guarantor of child.

* * * * *

11. The host parents acknowledge that at no time does the Foundation reimburse the host parents for insurance co-pay or any other expenses related to the child's medical treatment, or any other expenses related to the child, if letter of intent to adopt has been submitted.

* * * * *

13. The host parents agree, in the event that they submit notice of their intent to adopt, to pay a fee to the Foundation of $1,800.00 due and payable with notice of intent to adopt on or before the thirtieth day from the child's arrival. The host parents further agree to

4

> pay [to] the Foundation a fee of $750.00 in the event that the child remains in the United States as a medical mission child for twelve months after the initial arrival, unless travel would be life threatening to the child.

Appellee's App. pp. 163-65, 227-29, 320-23.

Each of the host families also signed a Fee Acceptance and Disclaimer Form, which provided:

> It is understood that the fee schedule of For the Children International is a requirement. At no time during the hosting of a medical mission child, will the fees increase.
>
> These fees are subject to change for future medical mission children without notice.
>
> The fees of the adoption agency (if applicable) that the host family chooses are in no way affiliated with For the Children and it is hereby noted that the foundation fees and operations are a completely separate entity and the foundation takes no responsibility for fee increases by separate agencies.

Id. at 171, 226, 319. Each family was provided with a fee schedule discussing the Foundation's fees. Appellants allege that Kathryn represented to them "that using her agency would result in being matched with a child 'sooner' and at a 'lower cost' than a regular international adoption service." Appellants' App. pp. 81, 110, 139.

Catholic Charities was an adoption agency and was one of the options available to Appellants to complete an adoption. According to Appellants, Kathryn also provided each family with a document prepared by Catholic Charities that listed the adoption costs. The estimated costs ranged, depending on the date the families were provided with the documents, from $11,800 to $14,280, excluding homestudy and post-placement fees.

5

The Meyers signed the Host Family Agreement and the Fee Acceptance and Disclaimer Form in January 2006. They were matched with a child less than two weeks later, and the child was placed in their home in August 2006. The Dunns signed the Host Family Agreement in September 2006, and they were matched with a child the same month. The child was placed in their home in May 2007. The Rothenbushes executed the Host Family Agreement and the Fee Acceptance and Disclaimer Form in December 2006, and they were matched with a child in January 2007. The child was placed in their home in May 2007.

Each of the families indicated their desire to adopt the children and chose to use Catholic Charities to complete the adoptions. At some point after the children were placed with the host families, the host families allege that Kathryn provided them with revised fee schedules for the Catholic Charities adoption costs ranging from $17,200 to $19,880. Ultimately, each family paid over $30,000 to complete the adoptions, which were completed in late 2010. Appellants allege that Kathryn "induced" them "not to call Catholic Charities stating the agency is 'difficult to deal with' and they should just do what they are told." Id. at 82, 111, 140.

In April 2011, Appellants filed a complaint against Kathryn, the Foundation, and Catholic Charities, alleging the following claims: (1) fraud against Kathryn and the Foundation; (2) constructive fraud against Kathryn, the Foundation, and Catholic Charities; (3) breach of contract against Kathryn and the Foundation; and (4) negligence

6

against Kathryn, the Foundation, and Catholic Charities.[1] The basis of the claims related to the increased cost of the adoptions. The trial court later dismissed the constructive fraud and negligence counts based on the statute of limitations. As a result, Catholic Charities was also dismissed from the proceedings. In October 2012, the trial court granted a stay of the proceedings against Kathryn pursuant to the bankruptcy code stay provisions, 11 U.S.C. § 362(a)(1), leaving only Appellants' fraud and breach of contract claims against the Foundation to proceed. The Foundation then brought a counterclaim against Appellants for breach of contract and pursuing a frivolous lawsuit.

In June 2012, the Foundation filed a motion for summary judgment. The Foundation argued that it was entitled to summary judgment on the breach of contract claim and the fraud claim. Appellants responded and argued that the Foundation, through Kathryn, provided them with fee schedules representing the costs of a Philippine adoption but that the ultimate costs significantly exceeded the amounts listed on the fee schedules. Appellants also filed a cross-motion for summary judgment on the Foundation's counterclaim against them. The Foundation filed a response and designated additional evidence in opposition to Appellants' cross-motion for summary judgment.

After a hearing, the trial court entered an order granting the Foundation's motion for summary judgment and denying Appellants' motion for summary judgment on the counterclaim. The trial court found no contract between Appellants and the Foundation regarding the adoption fees. Consequently, the trial court found that the Foundation was

---

[1] The complaint also included claims against Gary Davis, but he was dismissed by stipulation in June 2011.

7

entitled to summary judgment on Appellants' breach of contract claim. Similarly, the trial court found regarding the fraud claim that "all of the contentions of the [Appellants] concerning fraud involved future occurrences" and that the Foundation was entitled to summary judgment on the fraud claim. Appellants' App. p. 22. The trial court found genuine issues of material fact regarding the Foundation's counterclaims and denied Appellants' cross-motion for summary judgment regarding the counterclaims. The trial court found no just reason for delay and entered final judgment regarding the granting of the Foundation's motion for summary judgment, leaving the counterclaims pending for future proceedings.

On appeal, Appellants argued, in part, that the trial court erred by denying their motion for summary judgment regarding the Foundation's counterclaims. However, we dismissed Appellants' appeal regarding that issue because the trial court specifically did not enter final judgment regarding that issue. See Ind. Trial Rule 54(B); T.R. 56(C).

**Analysis**

Appellants argue that the trial court erred by granting the Foundation's motion for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56. We liberally construe all designated evidentiary material in a light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind. 2009). The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. Id. Our

8

review of a summary judgment motion is limited to those materials designated to the trial court. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001).

## I. Breach of Contract

Appellants claim that the trial court improperly resolved disputed material facts rather than leaving resolution of those facts to the fact finder. In its motion for summary judgment, the Foundation argued that, pursuant to the Host Family Agreement and Fee Acceptance and Disclaimer Form, the Foundation did not control the adoption fees and that the Foundation did not breach its contracts with Appellants. The trial court agreed, concluding that the adoption fees were not part of those contracts. According to Appellants, the Foundation breached a contract because the Foundation misrepresented the adoption costs to entice Appellants to use the Foundation's services. Appellants contend that the Foundation promised Appellants that they would incur lower adoption costs by working with the Foundation.

Appellants cite no authority demonstrating how the alleged representations regarding the adoption costs were part of a contract between the Foundation and Appellants. In fact, in their section of argument related to the breach of contract theory, Appellants cite no authority whatsoever. Indiana Appellate Rule 46(A)(8)(a) requires an appellant to make arguments supported by cogent reasoning and "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . . ." Because Appellants do not present a cognizable argument in support of this assertion, the issue is waived. Loomis v. Ameritech Corp., 764 N.E.2d 658, 668 (Ind. Ct. App. 2002), trans. denied.

9

Waiver notwithstanding, the essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. Fowler v. Campbell, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993). In general, "in construing [a] written instrument, the language of the instrument, if unambiguous, determines the intent of the instrument such that parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence." Clark v. CSX Transp., Inc., 737 N.E.2d 752, 758 (Ind. Ct. App. 2000), trans. denied. In the Host Family Agreement and the Fee Acceptance and Disclaimer Form, Appellants were repeatedly and unambiguously informed that, if they chose to adopt, they would be required to retain the services of an adoption agency and that the Foundation had no control over the adoption procedures or fees. Except in the case of fraud, which we address in Issue II, parol evidence is inadmissible to vary those contracts.

To the extent Appellants argue that the Foundation provided them with the Catholic Charities' adoption fee schedule after signing the Host Family Agreement and the Fee Acceptance and Disclaimer Form, the trial court found no consideration to form a separate contract. We agree. An offer, acceptance, plus consideration make up the basis for a contract. Homer v. Burman, 743 N.E.2d 1144, 1146 (Ind. Ct. App. 2001). "A mutual assent or a meeting of the minds on all essential elements or terms must exist in order to form a binding contract." Id. at 1146-47. "Assent to those terms of a contract may be expressed by acts which manifest acceptance." Id. at 1147. "Consideration is defined as a benefit to the party promising, or a loss or detriment to the party to whom the

10

promise is made." Pistalo v. Progressive Cas. Ins. Co., 983 N.E.2d 152, 159 (Ind. Ct. App. 2012), trans. denied. "A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled." Id. "A detriment is a legal right the promisee has forborne." Id.

According to Appellants, the Foundation received consideration because, if Appellants adopted the children, the Foundation was "more quickly relieved of the responsibilities to provide care and support for the medical missions children." Appellants' Br. p. 10. The trial court properly noted that, under the Host Family Agreement, the Foundation was no longer financially responsible for the children after the host families signed the letters of intent to adopt. We further note that the designated evidence indicates no offer by the Foundation regarding the adoption fees. Simply providing a Catholic Charities updated adoption fee schedule to Appellants, if indeed that occurred, is insufficient to form a contract between the Foundation and Appellants regarding those adoption fees.

Appellants argue that genuine issues of material fact exist regarding the breach of contract claim. A genuine issue of material fact exists where "facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." Wicker v. McIntosh, 938 N.E.2d 25, 28 (Ind. Ct. App. 2010). A fact is "material" if it helps to prove or disprove an essential element of the plaintiff's cause of action. Lake States Ins. Co. v. Tech Tools, 743 N.E.2d 314, 318 (Ind. Ct. App. 2001). We conclude that the disputed facts cited by Appellants are not material to whether the Foundation breached a contract

11

with Appellants. The trial court properly found that the Foundation was entitled to summary judgment on Appellants' breach of contract claim.

## II. Fraud

Appellants also argue that the trial court erred by granting summary judgment to the Foundation on Appellants' fraud claim. Again, Appellants cite no authority whatsoever regarding their fraud claim. Indiana Appellate Rule 46(A)(8)(a) requires an appellant to make arguments supported by cogent reasoning and "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . . ." Because Appellants do not present a cognizable argument in support of this assertion, the issue is waived. Loomis, 764 N.E.2d at 668.

Waiver notwithstanding, the five elements of actual fraud are: 1) a false statement of past or existing material fact, 2) made with knowledge it was false or made recklessly without knowledge of its truth or falsity, 3) made for the purpose of inducing the other party to act upon it, 4) and upon which the other party did justifiably rely and act, 5) proximately resulting in injury to the other party. Epperly v. Johnson, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000). The trial court found that all of Appellants' contentions concerning fraud involved future occurences, not past or existing material facts. There was no designated evidence that the Foundation was aware of what the final adoption costs would be. "[A]ctionable fraud arises from false representation of past or existing facts, not from representations as to future action or future conduct. It cannot be based on broken promises, unfulfilled predictions, or statements of existing intent which are not executed." Kopis v. Savage, 498 N.E.2d 1266, 1272 (Ind. Ct. App. 1986).

12

Appellants' claims on this issue are not entirely clear. They appear to argue that the Foundation committed fraud when it provided the Catholic Charities fee schedules to Appellants. However, Appellants were well aware that the Foundation did not control the adoption process or Catholic Charities' fees. In fact, Appellants could have chosen a different adoption agency. Unfulfilled predictions of the ultimate cost of the adoptions cannot give rise to actionable fraud. The trial court properly granted the Foundation's motion for summary judgment on Appellants' fraud claim.

### III. *Appellate Attorney Fees*

On appeal, the Foundation argues that it is entitled to appellate attorney fees pursuant to Indiana Appellate Rule 66(E), which provides: "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. Thacker v. Wentzel, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). Although Indiana Appellate Rule 66(E) provides this Court with "discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." Id.

Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. Id. To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are

13

utterly devoid of all plausibility. Id. Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Id. at 346-47. Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found. Id.

The Foundation argues that Appellants' appeal meets the requirements for both substantive and procedural bad faith. According to the Foundation, Appellants' appeal was made in substantive bad faith because Appellants improperly attempted to appeal the denial of their motion for summary judgment and improperly attempted to raise their dismissed constructive fraud claim by disguising it as a fraud claim. As for procedural bad faith, the Foundation argues that Appellants failed to include relevant summary judgment materials in their appendix and failed to make cogent arguments and cite authorities.

Although we acknowledge that Appellants' brief fails to fully comply with the Appellate Rules and that their argument on appeal fails, we cannot say that their arguments were "utterly devoid of all plausibility" or were "written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." Potter v. Houston, 847 N.E.2d 241, 249 (Ind. Ct. App. 2006). Consequently, we deny the Foundation's request for appellate attorney fees.

14

## Conclusion

The trial court properly granted the Foundation's motion for summary judgment regarding Appellants' breach of contract and fraud claims. Further, we conclude that the Foundation is not entitled to appellate attorney fees pursuant to Indiana Appellate Rule 66(E). We affirm.

Affirmed.

CRONE, J., concurs.

BAKER, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

HOLLY and CHRISTOPHER DUNN, )
HOLLY and BENJAMIN ROTHENBUSH, )
and TOMI and MICHAEL MEYER, )
                                           )
    Appellants-Plaintiffs, )
                                           )
        vs. )         No.  02A03-1307-PL-269
                                           )
KATHRYN DAVIS and FOR THE CHILDREN )
MEDICAL MISSION FOUNDATION, INC., )
                                           )
    Appellees-Defendants. )

**BAKER, Judge, dissenting**

I respectfully dissent. As Justice Massa recently stated, "sometimes standards of review decide cases." Robinson v. State, 5 N.E.3d 362, 363 (Ind. 2014). It is the standard of review that we must apply in the disposition of a summary judgment motion that compels me to part ways with my colleagues.

Summary judgment is a powerful tool. Its purpose is to terminate litigation before trial. Ebersol v. Mishler, 775 N.E.2d 373, 378 (Ind. Ct. App. 2002). Accordingly, the motion may not be granted in circumstances "[w]here material facts conflict, or undisputed facts lead to conflicting material inferences . . . ." Id. "This is true even if the court believes the non-moving party will not succeed at trial." Id.

16

Here, the trial court granted summary judgment in favor of the Foundation on the breach of contract claims because it essentially determined that there was no consideration. Appellants' App. p. 15. The Appellants' designated evidence tended to show that the Foundation needed host families to adopt the children to relieve the Foundation of its many responsibilities, including financial obligations and the well-being of each child. Id. at 37, 41, 45, 165-66, 193. From this evidence, the Appellants point out that the Foundation received a clear benefit, or consideration, by promising speedy and less costly adoptions.

On the other hand, the Foundation's argument is that there could be no consideration after the letter of intent to adopt was executed because the Foundation was no longer responsible for that child. Indeed, the Foundation simply matched and placed the child with the host family. Additionally, the Foundation agrees with the trial court's analysis that if the fee schedules were given before the Host Family Agreement and Fee Acceptance Disclaimer Form were signed, they did not become part of the contract; if they were signed after, there was no additional consideration. Id. These competing views indicate the existence of genuine issues of material fact that should not be decided at the summary judgment stage.

Moreover, I cannot agree with majority's statement that "[s]imply providing a Catholic Charities updated adoption fee schedule to Appellants, if indeed that occurred, is insufficient to form a contract between the Foundation and Appellants regarding those adoption fees." Slip op. at 11 (emphasis added). It is perplexing insofar as the record contains exhibits of Catholic Charities fee schedules. Appellant's App. p. 50-55.

17

Additionally, the Appellants stated in interrogatories that they were provided with the fee schedules. Appellants' App. p. 81-84; 109-113; 138-42.

The Appellants also contend that the trial court erred by deciding questions of material fact regarding its claim of fraud against the Foundation. More specifically, the trial court found that the Foundation made no contention that by using its services, the cost of an international adoption would be lower and much faster. As such, the trial court found that it did not have to determine whether the "matches" occurred sooner and at a lower cost since the crux of the complaint were the adoptions. The trial court also determined that the Appellants' intermingled "matching" with "adopting" and that the adopting fees were beyond the control of the Foundation. Appellants' App. p. 21.

Here, the Appellants designated evidence that the sum of the conversations leading to the signing of the Host Family Agreement and Fee Acceptance Disclaimer Form and the additional representations made afterwards led them to believe that the international adoption process beginning with the Foundation's "matching" mechanism would be faster and less costly than traditional international adoptions. The Appellants contend that the Foundation provided them with adoption fee schedules that represented that the cost of an international adoption would be between $11,800 and $14,280. Appellants' App. p. 81, 110, 139. The Appellants maintain that the Foundation was in a superior position of knowledge and influence and induced each Family through intimidation and exploitation of their emotional vulnerabilities. Id. at 81-83, 110-12, 139-42.

In light of this evidence, it appears that the trial court simply chose not to believe the Appellants' designated evidence that they relied on the Foundation's assertions that

18

working through them beginning with the <u>matches</u> would lead to faster and less costly <u>adoptions</u>. These are not necessarily assertions of future events, but rather, assertions of the expectations of a particular process. Additionally, although it may not have been the trial court's intention, it weighed the evidence, and by doing so, it essentially tried the case at the summary judgment stage of the proceedings. Again, because we must interpret the evidence and reasonable inferences in favor of the nonmoving party but expressing no opinion on the merits of this claim, I believe that summary judgment was improper.

With all due respect, I believe that my esteemed colleagues have essentially applied the abuse of discretion standard. In other words, the majority reviewed this appeal as if it had been tried, and this Court is reviewing the verdict. While I acknowledge that many of our trial courts are juggling overwhelming dockets, we must nevertheless seek to strike the appropriate balance between efficiency and ensuring that the citizens of this State have proper access to their courts. Admittedly, this is a close case, but one in which the proverbial scales tilt in favor of continuation of underlying litigation. Accordingly, I dissent.